IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DONALD J. STUART,<br><br>           Petitioner,<br><br>vs.<br><br>WARDEN KENNETH BLACK,<br><br>         Respondent. | CASE NO. 1:22-cv-362<br><br>DISTRICT JUDGE<br>DAN AARON POLSTER<br><br>MAGISTRATE JUDGE<br>JAMES E. GRIMES JR.<br><br>**REPORT &<br>RECOMMENDATION** |

Pro se Petitioner Donald Stuart filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. Doc. 1. Stuart is in custody at the Richland Correctional Institution due to a journal entry of sentence in the case *State v. Stuart*, Lake County Court of Common Pleas, Case No. 13 CR 000432. The Court referred this matter to a Magistrate Judge under Local Rule 72.2 for the preparation of a Report and Recommendation. For the following reasons, I recommend that the Petition be dismissed in part and denied in part.

**Summary of facts**

In habeas corpus proceedings brought by a person under 28 U.S.C. § 2254, factual determinations made by state courts are presumed correct. 28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. *Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012).

The Ohio Court of Appeals for the Eleventh Appellate District summarized the facts underlying Stuart's conviction as follows:

> {¶4} On June 12, 2013, Detective Colleen Petro ("Detective Petro") from the Mentor Police Department received information that another officer was taking a sexual assault report from a minor child victim against her adoptive father. The victim, "J.S.," who was 15 years old, alleged that Mr. Stuart made inappropriate and sexual comments and sexually assaulted her.

> {¶5} J.S. disclosed the abuse to a friend, and together they contacted Lake County Job & Family Services ("LCJFS") during the school day. A representative from LCJFS was also at the high school when Detective Petro arrived. Another detective informed Detective Petro that Mr. Stuart had been calling the high school all day because J.S. did not take the bus to school and he was worried she was missing. Detective Petro decided to take J.S. to the police station to make a statement.

> *The Monitored Call*
> {¶6} When they arrived at the station, the detective asked J.S. if she would be willing to make a monitored phone call to Mr. Stuart. J.S. agreed, and with Detective Petro's assistance, she called Mr. Stuart. J.S. told him she was with her friend, "Halle," and then asked him why he would abuse her, specifically mentioning the instances of rape and the sexual comments he made to her. Mr. Stuart denied her allegations, and at times, apologized, saying, "it was wrong," and also saying said he could not recall what happened and "anything is possible."

> {¶7} Mr. Stuart was coincidentally already at the Mentor Police Department when J.S. and Detective Petro were calling him. When J.S. did not get dropped off by the bus after school, he decided to go to the station and file a missing person report. There is a video of Mr. Stuart in the lobby talking on his cellphone, presumably to J.S.

2

*The Mentor Police Department Interview*

{¶8} When the call concluded, Detective Petro located Mr. Stuart in a downstairs interview room and asked him if he would be willing to discuss J.S.'s whereabouts with her and another officer, Detective Jim Collier. Before Detective Petro began the interview, she gave Mr. Stuart a written form detailing his Miranda rights. Mr. Stuart asked her if he should call his lawyer while simultaneously pulling his cell phone out of his pocket. Detective Petro informed Mr. Stuart it was up to him but that "he came here on his own." The reason she … gave him the form was "he [Mr. Stuart] had a lot of stuff going on in the court right now" and she "figured she's just going to cover herself. I'm a police officer." When asked if he would initial the form that she read and if he understood his rights, Mr. Stuart replied that he would initial the form but that he was going to call his attorney. Detective Petro replied, "Okay. Why did you come in today?"

{¶9} The videotape showed Mr. Stuart calling and texting his attorney, while Detective Petro inquired about J.S.'s disappearance and the last time he communicated with her. He willingly responded to her questions. When Mr. Stuart indicated he had just received a call from J.S., Detective Petro began to inquire of the specifics of his conversation. Mr. Stuart again attempted to call his attorney and ultimately left a message. Mr. Stuart continued to respond to the detective's questions but did not reveal the topic of his conversation with J.S.

{¶10} Mr. Stuart told the detectives that J.S. told the truth 90% of the time but that when she did not, the lies were "way out there." He then informed them that he was initially the foster parent of J.S. and her four biological brothers and sisters. Mr. Stuart and his wife, Sharon ("Mrs. Stuart"), adopted the children at different times over the years, adopting J.S. when she was eight. He also told them that J.S. had "RAD," or reactive attachment disorder, and he detailed her early history, which included several

3

different foster placements and prior sexual abuse. One of the abuse allegations was against her brother, who sexually abused J.S. in the Stuart's home. The brother was removed from the Stuart's home by LCJFS. LCJFS subsequently charged the Stuarts with neglect. Those charges were pending at the time of the interview.

{¶11} The interview progressed, with the detectives asking questions about J.S., the problems she was currently facing, and what she said during their "twenty-minute" phone call. Mr. Stuart did not share the details of the call. The detectives then disclosed that they knew J.S. had made sexual allegations against him and asked if he would like to help them "understand the situation."

{¶12} Mr. Stuart replied that he needed his attorney and tried calling his attorney once more. The detectives asked him several more questions, to which Mr. Stuart did not answer. Once Mr. Stuart repeated that he wanted to speak to his attorney, the interview concluded, and both detectives left the room. Mr. Stuart was arrested shortly thereafter.

*State v. Stuart*, No. 2018-L-145, 2020 WL 3047529, at *1–3 (Ohio Ct. App. June 8, 2020).

## Procedural background

### Trial court proceedings

In October 2013, the Lake County Grand Jury issued an indictment charging Stuart with three counts of rape (counts 1, 4, and 6); two counts of kidnapping (counts 2 and 3); two counts of sexual battery (counts 5 and 7); and one count of menacing by stalking (count 8). Doc. 10-1, at 6–9 (Exhibit 1).[1]

---

[1]     In this report and recommendation, all of the citations to the docket refer to the ECF document and page number shown at the top of the page.

Stuart, through counsel, pleaded not guilty to the charges. *Id.* at 10 (Exhibit 2). He was released on bond. *Id.*

In December 2013, Stuart requested a continuance of the scheduled January 2014 trial date, stating that counsel needed more time to prepare for the case. Doc. 10-1, at 12 (Exhibit 3). Stuart signed a statement waiving his speedy trial rights found in Ohio Revised Code § 2945.71 *et seq.* and under the Ohio and United States constitutions for "any time after [his] initial arrest." *Id.* at 12, 14 (Exhibit 4). The same day, Stuart filed a motion to suppress statements that he made to the Mentor Police Department during an interview. *Id.* at 17 (Exhibit 6).

On January 6, 2014, the trial court granted Stuart's motion for continuance; tolled the speedy trial time; charged the continuance to Stuart; and continued trial to March 25. Doc. 10-1, at 16 (Exhibit 5).

On March 5, 2014, Stuart moved to continue the March 25 trial date, stating that there were pending motions and discovery issues that needed to be resolved before counsel could prepare for trial. Doc. 10-1, at 35 (Exhibit 8). About ten days later, the trial court granted Stuart's motion; charged the continuance to Stuart; and continued trial "to a date to be determined." *Id.* at 37 (Exhibit 9). On March 14, the court held a hearing on the motion to suppress and took the matter under advisement, noting that it would set a new trial date after several pending motions were resolved. Doc. 10-2, at 35. Thereafter, various discovery motions were filed. *See* Doc. 10-1, at 395–96.

5

Between January 2015 and April 2018, the State filed four motions for status conferences and nine motions to set the case for trial, with no response from Stuart or the court. Doc. 10-1, at 396–97. The State also asked the court to rule on Stuart's pending motion to suppress. *Id*. at 39 (Exhibit 10). On June 25, 2018, the court denied Stuart's motion to suppress, finding that Stuart was not "in custody" when he was interviewed. *Id*. at 44–46 (Exhibit 11). The court explained that Stuart had gone to the police station on his own and asked to speak to the police about his daughter. *Id*. at 45. He was not placed under arrest or prevented from leaving during the interview, during which time he made and received cell phone calls and texts. *Id*. And because Stuart was not *in custody*, the court concluded, he did not have a right to counsel during the interview. *Id*. at 46.

On July 5, 2018, the court set trial for August 21. Doc. 10-1, at 397.

On July 18, Stuart filed a "Motion to discharge for violation of [his] right to a speedy trial," and, alternatively, asked to continue the upcoming trial date. *Id*. at 47 (Exhibit 12). In his motion, Stuart argued that over 1,554 days had passed between the court's last continuance, on March 14, 2014, and its ruling on Stuart's motion to suppress on June 25, 2018. *Id*. at 53. Stuart asserted that his actions did not cause the delay, he did not intend his speedy trial waiver to cover "an unlimited duration," and he was prejudiced by the delay in trial. *Id*. at 55. The State filed a response opposing Stuart's request for a discharge. *Id*. at 62–78 (Exhibit 13). On September 21, the court denied Stuart's motion for a

6

discharge. *Id*. at 92–97 (Exhibit 14). It found that Stuart's speedy trial waiver was without restriction, "including any time limit." *Id*. at 92–93. It held that Stuart had knowingly and voluntarily executed the waiver, never formally withdrew his waiver, and never demanded a trial date during the relevant period. *Id*. at 94–95. The court granted Stuart's request to continue, *id*. at 47–48, 98, and re-set trial for October 30, 2018, *id*. at 111 (Exhibit 16).

During the two weeks before trial, the parties filed motions in limine. Stuart asked the court to exclude the testimony of the State's expert witness, sexual assault nurse examiner (SANE) Diane Daiber. Doc. 10-1, at 112–16 (Exhibit 17). Stuart argued that Daiber did not meet the expert witness requirements of Ohio Rule of Evidence 702 and *Daubert*.[2] *Id*. The court denied Stuart's motion, stating that if the State could establish that Daiber had the requisite education, training, and experience, her testimony would be admissible and would aid the jury in understanding the evidence. *Id*. at 124 (Exhibit 19).

The State asked the court to allow it to present under Ohio Rule of Evidence 404(B) evidence of Stuart's prior conduct towards the victim, including that Stuart was "grooming" or manipulating the victim before and during the time the charged offences occurred. Doc. 10-1, at 126–32, 140. And the State asked the court to exclude under Ohio's rape shield statute, Ohio Revised Code 2907.02(D), evidence of "any prior sexual

---

[2]     *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

assault/abuse/activity/behavior of the victim by/with/due to an individual other than [Stuart]." *Id*. at 133–34. Stuart opposed the State's motions. *Id*. at 135 (Exhibit 22), 140. The court denied the State's Evidence Rule 404(B) motion. Doc. 10-1, at 140 (Exhibit 23). The court granted the State's rape-shield-statute motion, *id*. at 141–43 (Exhibit 24), finding that the statute prohibits the admission of evidence of non-consensual sexual activity. *Id*. at 141.

Stuart asked the court to exclude the expert testimony of the State's expert witness, Dr. Joann Jackson. Doc. 10-1, at 144–47 (Exhibit 25). The State said that it would not call Dr. Jackson, so the court granted Stuart's motion. *Id*. at 149 (Exhibit 26). The State asked the court to preclude as to witnesses any evidence of their character or "other crimes, wrongs[,] or acts." Doc. 10-1, at 150–52 (Exhibit 27). The court granted this motion. *Id*. at 153 (Exhibit 28).

The case proceeded to trial and the jury found Stuart guilty as charged. Doc. 10-1, at 154 (Exhibit 29). At sentencing, the court found that the two kidnapping counts and the two sexual battery counts merged with the rape counts. *Id*. at 167 (Exhibit 30). The State elected to proceed to sentencing on counts 1, 4, and 6 (rape) and count 8 (menacing by stalking). *Id*. The trial court sentenced Stuart to an aggregate prison term of 16 years, as follows: 10 years in prison for count 1; 6 years in prison each for counts 4 and 6, to run concurrent with each other and consecutively to the sentence in count 1; and 12 months in prison for count 8, to run concurrent to the other sentences. *Id*.

*Direct appeal*

Stuart, through new counsel, timely appealed to the Ohio court of appeals. Doc. 10-1, at 172 (Exhibit 31). In his brief, he raised the following assignments of error:

> 1. The trial court's application of Ohio's rape shield statute, R.C. 2907.02(D), violated the defendant-appellant's constitutional rights to fair trial, confrontation and due process as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I Sections 10 and 16 of the Ohio Constitution.[3]

> 2. The defendant-appellant was deprived of his rights to a fair and impartial trial and due process under the Fourteenth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution when the trial court allowed the state to introduce evidence of his alleged "prior bad acts."

> 3. The trial court violated the defendant-appellant's constitutional rights to fair trial and due process, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Article I Sections 10 and 16 of the Ohio Constitution, when it permitted the SANE nurse to testify as an expert witness.

> 4. The trial court erred when it denied the defendant-appellant's motion to suppress in violation of his due process rights as guaranteed under the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution and Section 10, Article I of the Ohio Constitution.

> 5. The trial court erred to the prejudice of the defendant-appellant when it denied his motion for acquittal made pursuant to Crim.R. 29(A).

---

[3]     Stuart's claims are reproduced as written.

> 6. The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence.
>
> 7. The trial court erred in denying the defendant-appellant's motion to discharge for violation of defendant's right to a speedy trial, thus violating the defendant-appellant's constitutional and statutory rights to a speedy trial.

Doc. 10-1, at 189–93 (Exhibit 32). On June 8, 2020, the Ohio court of appeals affirmed the trial court's judgment. *Id*. at 276–309 (Exhibit 34).

On August 24, 2020, Stuart filed a pro se notice of appeal with the Ohio Supreme Court, Doc. 10-1, at 310 (Exhibit 35), and a motion for delayed appeal, *id*. at 312 (Exhibit 36), which the court granted, *id*. at 350 (Exhibit 37). In his memorandum in support of jurisdiction, Stuart set forth the following propositions of law:

> 1. Trial Court erred when it allowed the Complainant to testify to Appellant's alleged prior bad acts.
>
> 2. The Trial Court erred by allowing a SANE nurse to testify that delayed disclosure of sexual abuse by a minor was common when the trial court and all interested parties knew the alleged victim had been sexually abused before and had reported or disclosed it immediately without delay.
>
> 3. The Trial Court erred by failing to grant the motion to suppress the testimony/interview in the Mentor Police Department.
>
> 4. The Trial Court erred by not granting Appellant's Motion to Discharge for a violation of his Speedy Trial rights deceptively violated by the Trial Court's

> taking 1,564 days to rule on Appellant's Motion to
> Suppress.

Doc. 10-1, at 352 (Exhibit 38). On January 22, 2021, the Ohio Supreme Court

declined under its rule of practice 7.08(B)(4) to accept jurisdiction of Stuart's

appeal. *Id*. at 381 (Exhibit 40).

*State post-conviction petition*

In March 2022, Stuart filed in the trial court a petition to vacate or set

aside judgment of conviction or sentence and raised these claims:

> 1. Wrongful application of the Rape Shield Statute,
> barred substantive evidence to proof innocence.
>
> Fifth, Sixth, and Fourth, and Fourteenth
> Amendment rights violated; also Article I, Section
> 10 of the U.S. Constitution was violated. Federal,
> civil and state, violation also.
>
> 2. Petitioner was deprived of his rights, pursuant to
> the "Confrontation Clause," (citing) the Rape Shield
> Statute, and State's improper use of it to barr, evid.
> against the alleged victim, that was "essential." U.S.
> Const. and Federal, Civil, State rights violated.
>
> The barred evidence is factual and explicitly
> established. Prosecution, chose to use the wrong
> application, to prevent the petitioner from proving
> his innocence, and to protect this wrongful
> conviction, vigorously; thus violating due process of
> law.

Doc. 10-1, at 383–84 (Exhibit 41). On April 26, 2022, the trial court denied

Stuart's petition, finding that the petition wasn't timely and that Stuart's

claims were barred by res judicata because they could have been raised, and

were raised, on direct appeal. *Id*. at 392 (Exhibit 43); Doc. 13, at 5. The trial

court also denied Stuart's motions for appointed counsel and expert assistance.
Doc. 10-1, at 392; Doc. 13, at 7, 11.

Stuart did not file an appeal.[4]

*Federal habeas corpus petition*

On February 20, 2022, Stuart filed a federal habeas corpus petition
under 28 U.S.C. § 2254.[5] Doc. 1. He raised the following grounds for relief:

> **Ground one**: The trial court's application of Ohio's
> Rape Shield statute, R.C. 2907.02(D), violated the
> defendant-appellant's constitutional rights to fair
> trial, confrontation and due process as guaranteed
> by the Fifth, Sixth and Fourteenth Amendments to
> the United States Constitution and Article I
> Sections 10 and 16 of the Ohio Constitution.

> **Ground two**: The defendant-appellant was
> deprived of his rights to a fair and impartial trial
> and due process under the Fourteenth Amendment
> to the United States Constitution, and Section 10,
> Article I of the Ohio Constitution when the trial
> court allowed the State to introduce evidence of his
> alleged "prior bad acts."

> **Ground three**: The trial court violated the
> defendant-appellant's constitutional rights to fair
> trial and due process, as guaranteed by the Fifth and
> Fourteenth Amendments to the United States
> Constitution and Article I Sections 10 and 16 of the

---

[4]    The Warden stated that at the time he filed the state court record, in
June 2022, Stuart had not appealed the trial court's judgment. Doc. 10, at 10.
Review of the relevant electronic state-court docket shows that Stuart still has
not filed an appeal.
*See* https://phoenix.lakecountyohio.gov/eservices/home.page.2.

[5]    A petition is deemed filed when a petitioner places it the prison mailing
system. *Houston v. Lack*, 487 U.S. 266, 270 (1988). Stuart states that he placed
his Petition in the prison mailing system on February 20, 2022. Doc. 1, at 16.

Ohio Constitution, when it permitted the SANE nurse to testify as an expert witness.

**Ground four**: The trial court erred when it denied the defendant-appellant's motion to suppress in violation of his due process rights, as guaranteed under the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution and Section 10, Article I of the Ohio Constitution.

**Ground five**: The trial court erred to the prejudice of the defendant-appellant when it denied his motion for acquittal made pursuant to Crim.R. 29(A).

**Ground six**: The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence.

**Ground seven**: The trial court erred in denying the defendant-appellant's motion to discharge for violation of defendant's right to a speedy trial, thus violating the defendant-appellant's constitutional and statutory rights to a speedy trial.

**Ground eight**: Wrongful Arrest…. Stuart's Arrest (and then), investigation and interrogation, pursuant to his "Miranda Warning", (without any charges), first; to wit violations of police policies and procedural practice of law, was committed. The Petitioner's U.S. Constitutional Rights were violated, thereby defrauding tactics, and violation of due process of law.

**Ground nine**: Fundamental Miscarriage of Justice. The Petitioner, Donald J. Stuart, Declares his "Actual Innocence."

**Ground ten**: Confrontation Clause Violation…. The trial court erred in ruling that evidence of the Complaint's prior sexual abuse was inadmissible under Ohio's Rape Shield Statute, O.R.C. 2907(D), because that statute only applies to consensual sexual activity of a complainant—[Allege Victim.

**Ground eleven**: Evidentiary Hearing Violation, and Deprivation thereof.

**Ground twelve**: Illegally seizure of forensic evidence, blood drawn, mouth swab, genital [penis swab—internally]

**Ground thirteen**: (Conflict of Interest Jury Tamper), pursuant to a mis-trial, not executed.

**Ground fourteen**: Ineffective assistance of counsel

**Ground fifteen**: Impeachment, trial court failed to invoke impeachment…. evidence rules, 601 through 616.

**Ground sixteen**: Criminal coercion with intimidation, pursuant to forced testimony of spouse against spouse.

**Ground seventeen**: fraud upon the court.

Doc. 1, at 6–11; Doc. 1-2, at 2–7, 42, 62, 68–70, 72–73, 75–77.[6] The Warden filed a Return of Writ, Doc. 10, and Stuart filed a traverse, Doc. 11.

**Legal Standard**

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104–132, 110 Stat. 1214, petitioners must meet certain procedural requirements to have their claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as statutes of limitations and rules concerning procedural default and

---

[6]      In support of his Petition, Stuart filed an 80-page supporting brief. Doc. 1-2. This brief includes a "Table of Contents" listing seven grounds for relief, *id*. at 2–6, and references the next 73 pages in which one finds ten more grounds for relief, *id*. at 6.

exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies when state remedies are "still available at the time of the federal petition." *Id.* (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). But when state court remedies are no longer available, procedural default rather than exhaustion applies. *Id.*

   *Exhaustion*

   A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A). A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action. 28 U.S.C. § 2254(b),(c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) ("Federal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts") (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)). A constitutional claim for relief must be presented to the state's highest court to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). And a habeas petitioner must present both the

15

factual and legal underpinnings of the claims to the state courts. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). This means that the "petitioner must present his claim to the state courts as a federal constitutional issue— not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).

*Procedural default*

Procedural default may occur in two ways. *Williams*, 460 F.3d at 806. First, a petitioner procedurally defaults a claim by failing "to comply with state procedural rules in presenting [the] claim to the appropriate state court." *Id*. In *Maupin v. Smith*, the Sixth Circuit directed courts to consider four factors when determining whether a claim is barred on habeas corpus review due to a petitioner's failure to comply with a state procedural rule: whether (1) there is a state procedural rule applicable to the petitioner's claim and whether the petitioner failed to comply with that rule; (2) the state court enforced the procedural rule; (3) the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) the petitioner can demonstrate cause for failing to follow the rule and actual prejudice by the alleged constitutional error. 785 F.2d 135, 138 (6th Cir. 1986); *see also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent

and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848). "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id*. While the exhaustion requirement is satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson*, 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review, *Williams*, 460 F.3d at 806.

To overcome a procedural bar, petitioners must show cause for the default and actual prejudice that resulted from the alleged violation of federal law that forms the basis of their challenge, or that there will be a fundamental miscarriage of justice if the claims are not considered. *Coleman*, 501 U.S. at 750.

*Merits review*

If a state's courts adjudicated the merits of a claim, a habeas petitioner may obtain habeas relief under 28 U.S.C. § 2254, if the petitioner can establish one of two predicates. To establish the first predicate, the petitioner "must identify a 'clearly established' principle of 'Federal law' that" has been

17

established by a holding of the Supreme Court. *Fields v. Jordan*, 86 F.4th 218, 231 (6th Cir. 2023) (en banc); *see* 28 U.S.C. § 2254(d)(1). The petitioner must then show that state's court's adjudication "was *contrary to*," or "involved an *unreasonable application* of" that "clearly established" precedent. 28 U.S.C. § 2254(d)(1) (emphasis added); *see Fields*, 86 F.4th at 232.

To establish the second predicate, the petitioner must show that the state's court's adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or" based on "a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A]n 'unreasonable application of'" the Court's holdings is one that is "'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003)).

"[A] 'clearly established' principle of 'Federal law' refers to the "holdings," not "dicta," of the Supreme Court's decisions. *Fields*, 86 F.4th at

18

231 (quoting *White*, 572 U.S. at 419). A state court is not required to cite Supreme Court precedent or reflect an "awareness" of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002); *Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005). If the Supreme Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted contrary to, or unreasonably applied, Supreme Court precedent or clearly established federal law. *Carey v. Musladin*, 549 U.S. 70, 77 (2006); *see White*, 572 U.S. at 426 ("Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error.").

In determining whether the state court's decision involved an unreasonable application of law, the Court uses an objective standard. *Williams*, 529 U.S. at 410. "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011). "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well

understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

**Discussion**

*1.    Grounds one, five, six, and ten are procedurally defaulted*

In grounds one and ten, Stuart alleges that the trial court misapplied Ohio's rape shield statute in violation of his constitutional right to confrontation. Doc. 1, at 6; Doc. 1-2, at 2, 68. In ground five, Stuart asserts that the trial court erred when it denied his motion for acquittal when the State failed to prove that there was sufficient evidence to establish all of the elements of the charged crimes. Doc. 1-2, at 15. And in ground six, Stuart argues that his convictions were against the manifest weight of the evidence. *Id*. at 6.

All of these grounds for relief are procedurally defaulted.[7] Stuart raised these claims on direct appeal to the Ohio court of appeals, Doc. 10-1, at 189, 192–93, but he didn't raise them when he appealed to the Ohio Supreme Court, *id*. at 352. *See O'Sullivan*, 526 U.S. at 845 (a petitioner must present a claim to the state appellate court and the state supreme court for discretionary review or it is procedurally defaulted); *Williams*, 460 F.3d at 806 (a petitioner must raise a claim in state court "and pursue that claim through the state's 'ordinary appellate review procedures'").

---

[7]    To the extent that the manifest weight claim is distinct from a sufficiency claim, it is not cognizable on federal habeas review. *See Jaeger v. Wainwright*, No. 1:19-cv-2853, 2023 WL 6554265, at *22 (N.D. Ohio Sept. 1, 2023) (citing and discussing cases), *report and recommendation adopted*, 2023 WL 6282944 (N.D. Ohio Sept. 27, 2023).

Stuart hasn't alleged cause to excuse the procedural default. Ineffective assistance of appellate counsel would not excuse the procedural default because Stuart filed a pro se appeal to the Ohio Supreme Court and had no right to counsel for this appeal. *See Wainwright v. Torna*, 455 U.S. 586, 588 (1982) (a petitioner could not be deprived of effective assistance of counsel when he had no constitutional right to that counsel).

Stuart hasn't shown that he suffered a fundamental miscarriage of justice such that his is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). A claim of actual innocence "requires the petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Stuart states that he is "actual[ly] innocent," Doc. 1-2, at 62, but has not provided "new reliable evidence" showing so, *see Schlup*, 513 U.S. at 324. Grounds one, five, six, and ten are procedurally defaulted.

> **2.** *A portion of ground two is not cognizable and fails on the merits and the remainder is procedurally defaulted*

In ground two, Stuart argues that he was denied his right to a fair and impartial trial because the trial court permitted the State to introduce evidence of Stuart's "alleged 'prior bad acts.'" Doc. 1, at 8; Doc. 1-2, at 3. Ground two has three subclaims: the trial court (1) permitted the victim to testify about

21

"specific instances of [Stuart's] sexual activity" in violation of Ohio Evidence Rule 404(B); (2) did so without holding an evidentiary hearing; and (3) permitted evidence of "grooming" without giving the jury a limiting instruction that the evidence couldn't be used to establish Stuart's character or show that Stuart acted in conformity with that behavior. Doc. 1-2, at 3–4.

### 2.1  The claim based on Ohio Evidence Rule 404(B) is not cognizable and fails on the merits

Stuart's claim that the trial court violated Ohio Evidence Rule 404(B) is not cognizable. "[E]rrors in application of state law, especially with regard to the admissibility of evidence, are usually not cognizable in federal habeas corpus." *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983); *see Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) (a federal habeas court does not "reexamine state-court determinations on state-law questions," including the admissibility of evidence).

"When an evidentiary ruling is so egregious that it results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). To rise to the level of a due process violation, a state-court evidentiary ruling must "offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996), in turn quoting *Patterson v. New York*, 432 U.S. 197, 202 (1977)).

The Ohio court of appeals considered this claim as follows:

{¶49} In Mr. Stuart's second assignment of error, he contends he was deprived of his rights to a fair trial and due process when the trial court allowed the state to introduce evidence of his "alleged bad acts."

{¶50} More specifically, the trial court allowed the state to introduce evidence of Mr. Stuart's "grooming and manipulation" behaviors toward the victim. J.S. testified at trial that Mr. Stuart laid down in bed with her and read her stories, attempted to snuggle with her, showed her pornography, digitally penetrated her for several years before she reached the age of 13, and made inappropriate sexual comments to her. Further, the state's expert on child victim sexual abuse, Ms. Daiber, the SANE nurse, explained to the jury that "grooming" is a term used to describe the manipulative behavior a person engages in to prepare the child for sexual abuse and discourage the child from disclosing the abuse.

{¶51} The general principle that guides admission of evidence is that "[a]ll relevant evidence is admissible * * *." Evid.R. 402. Evid.R. 403 provides exceptions to this general principle and provides circumstances for the exclusion of relevant evidence.

{¶52} Another exception to the principle that all relevant evidence is admissible is Evid.R. 404(B), which provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

{¶53} "Evid.R. 404 codifies the common law with respect to evidence of other acts of wrongdoing. *State v. Lowe*, 69 Ohio St.3d 527, 530 * * * (1994). The rule contemplates acts that may or may not be similar to the crime at issue. *State v. Broom*, 40 Ohio St.3d 277, 282 * * * (1988). If the other act is offered for some

23

relevant purpose other than to show character and propensity to commit crime, such as one of the purposes in the listing, the other act may be admissible. *Id*. Another consideration permitting the admission of certain other-acts evidence is whether the other acts 'form part of the immediate background of the alleged act which forms the foundation of the crime charged in the indictment' and are 'inextricably related' to the crime. *State v. Curry*, 43 Ohio St.2d 66, 73 * * * (1975). *See also Broom* at 282 * * *.

{¶54} "'The admission of such [other-acts] evidence lies within the broad discretion of the trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that created material prejudice.' *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, * * * ¶66. *See also State v. Sage*, 31 Ohio St.3d 173, * * * (1987), paragraph two of the syllabus ('The admission or exclusion of relevant evidence rests within the sound discretion of the trial court')." *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, ¶11-14.

{¶55} "Evidence that an accused committed a crime other than the one for which he is on trial is not admissible when its sole purpose is to show the accused's propensity or inclination to commit crime, or that he acted in conformity with bad character." *State v. Jeffries*, 8th Dist. Cuyahoga No. 105379, 2018-Ohio-162, ¶26, quoting *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, ¶15. There are, however, exceptions that allow other acts of wrongdoing to be admitted. *Id*. at ¶23.

{¶56} Thus, pursuant to R.C. 2945.59, "[i]n any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous

with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."

{¶57} Further, Evid.R. 404(B) provides that evidence of other crimes, wrongs, or acts is permitted to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or the absence of mistake or accident.

{¶58} In deciding whether to admit other acts evidence, trial courts should conduct a three-step analysis: (1) consider whether the evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence (Evid.R. 401); (2) whether evidence of the crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose such as those stated in Evid.R. 404(B); and (3) consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice (Evid.R. 403). *Jeffries*, 2018-Ohio-162 at ¶26, citing *Williams* at ¶20.

{¶59} Applying this test to the challenged testimony, we find no abuse of discretion by the trial court in admitting this evidence. Firstly, the other acts evidence was relevant because it tended to show Mr. Stuart's plan for grooming J.S. for sexual activity. "'Shaping and grooming describes the process of cultivating trust with a victim and gradually introducing sexual behaviors until reaching the point of intercourse.'" *Id.* at ¶27, quoting *Williams* at ¶21, quoting *United States v. Johnson*, 132 F.3d 1279, 1280 (9th Cir. 1997), fn. 2.

{¶60} Secondly, the testimony was elicited for a legitimate purpose under Evid.R. 404(B), which provides that other acts evidence may be admitted

25

> to "show motive, intent, plan, scheme and absence of mistake." *Id.* at ¶28.
>
> {¶61} Lastly, the probative value of the evidence was not outweighed by the danger of unfair prejudice. Rather than solely inflaming the jury and appealing only to its emotions, the evidence of Mr. Stuart's grooming of J.S. provided a basis for the jury to recognize his ongoing scheme for sexual activity with J.S. *Id.* at ¶29.

*Stuart*, 2020 WL 3047529, at *7–9.

Stuart hasn't shown that the Ohio court of appeals' decision was contrary to or an unreasonable application of clearly established Supreme Court precedent. *See* 28 U.S.C. § 2254(d)(1). Indeed, a petitioner is not entitled to federal habeas relief based on a theory that the admission of prior-bad-acts evidence was used to show propensity to commit the charged act. *See Bugh*, 329 F.3d at 512 ("There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence"); *see also Flakes v. Campbell*, No. 19-1154, 2019 WL 3814338, at *2 (6th Cir. June 5, 2019).

### 2.2    *The remaining claims are procedurally defaulted*

Stuart's claim that the trial court failed to hold an evidentiary hearing when deciding the prior-bad-acts admissibility question is procedurally defaulted. Although Stuart raised this issue to the Ohio court of appeals, Doc. 10-1, at 191, he didn't present it on appeal to the Ohio Supreme Court, *see id.*, at 358, as he was required to do. *See O'Sullivan*, 526 U.S. at 845; *Williams*, 460 F.3d at 806. As explained above in ground one, Stuart hasn't shown cause or

actual innocence to overcome the procedural default.

Stuart's claim that the trial court erred by not giving the jury a limiting instruction is also procedurally defaulted. This is so because the Ohio court of appeals applied plain error review to Stuart' claim, observing that Stuart's counsel did not request a limiting instruction. *See Stuart*, 2020 WL 3047529, at *9 ("Because Mr. Stuart did not request a limiting instruction [at trial], he has waived all but plain error."). Ohio's long-standing contemporaneous objection rule requires a party to make a contemporaneous objection to an alleged trial error to preserve the error for appellate review. *See, e.g., State v. Murphy*, 747 N.E.2d 765, 788 (Ohio 2001). When an Ohio court applies plain error review, it enforces an independent and adequate state ground that precludes federal habeas review. *Scott v. Mitchell*, 209 F.3d 854, 866–71 (6th Cir. 2000). And the state court's plain error review "does not constitute a waiver of the state's procedural default rules and resurrect the issue." *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012) (quoting *Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006)).

Stuart has not alleged cause to excuse the procedural default of this claim. Because trial counsel's failure to object to the lack of limiting instruction is apparent from the state court record, Stuart was required to raise any related ineffective-assistance-of-trial-counsel claim on direct review. *See Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001) ("Ohio courts have consistently held that claims that can be adjudicated based on facts in the record can only

be presented on direct appeal") (citing *State v. Lentz*, 639 N.E.2d 784, 785 (Ohio 1994)).

Ineffective assistance of appellate counsel would not excuse the procedural default because any ineffective-assistance-of-appellate-counsel claim is itself procedurally defaulted. *See Edwards v. Carpenter*, 529 U.S. 446, 451–53 (2000) (Ineffective assistance of appellate counsel can serve as cause to excuse a procedural default, but only if the ineffective assistance of appellate counsel claim is not itself procedurally defaulted and the court finds that appellate counsel was constitutionally ineffective). Stuart hasn't filed in state court an Ohio Appellate Rule 26(B) application to reopen to allege ineffective assistance of appellate counsel.[8] He has not alleged in his federal habeas filings any reason indicating good cause for filing a late application, more than three years after it would have been due. *See, e.g., Prieto v. Schweitzer*, No. 4:18-cv-222, 2019 WL 2605639, at *8, n.5 (N.D. Ohio May 31, 2019) (the petitioner's failure to file an Ohio Appellate Rule 26(B) application to reopen or provide any reason why he had not filed one procedurally defaulted any ineffective-assistance-of-appellate-counsel claims), *report and recommendation adopted*,

---

[8]     Ohio Appellate Rule 26(B) provides:

A defendant in a criminal case may apply for reopening of the appeal from the judgment of conviction and sentence, based on a claim of ineffective assistance of appellate counsel. An application for reopening shall be filed in the court of appeals where the appeal was decided within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time.

2021 WL 147049 (N.D. Ohio Jan. 15, 2021); *Rice v. Welch*, No. 3:10-cv-1916, 2014 WL 4794585, at *26 (N.D. Ohio Sept. 23, 2014). And Stuart hasn't shown cause to excuse the procedural default of *that* claim, or actual innocence.

### 3.   Ground three is not cognizable and fails on the merits

In ground three, Stuart claims that his constitutional rights to a fair trial and due process of law were violated when the trial court allowed the sexual assault nurse examiner to testify as an expert witness. Doc. 1–2, at 4. Stuart complains that the nurse's testimony did not comply with Ohio Evidence Rule 702(A), *id.*, and included subjects such as "the definition of 'grooming'" and "the prevalence of delayed disclosures in child-victims," *id.* at 27.

To the extent that Stuart challenges the nurse's testimony as a violation of Ohio Evidence Rule 702(A), *Testimony by experts*, such a claim is an alleged state-law violation and is not cognizable. *See Estelle*, 502 U.S. at 67–68.

As explained above, to obtain relief for a state-law evidentiary ruling, Stuart must show that the state court's evidentiary ruling "offend[s] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Seymour*, 224 F.3d at 552. The Ohio court of appeals considered Stuart's claim:

> {¶65} In his third assignment of error, Mr. Stuart contends the trial court erred in allowing the state's expert witness, Ms. Daiber, a SANE nurse, to testify. He argues that her testimony, per Evid.R. 702(A), did not relate to matters beyond the knowledge or experience possessed by lay persons or dispel a

misconception common among lay persons, and that it, in fact, misled the jury.

{¶66} "The determination of the admissibility of expert testimony is within the discretion of the trial court. Evid.R. 104(A). Such decisions will not be disturbed absent abuse of discretion." *State v. Cook*, 11th Dist. Lake No. 2016-L-079, 2017-Ohio-7953, ¶40, quoting *Valentine v. Conrad*, 110 Ohio St.3d 42, 2006-Ohio-3561, ¶9.

{¶67} At trial, the state called Diane Diaber, a registered nurse who is certified as a SANE examiner for adolescents, adults, and pediatrics. Ms. Diaber has over fifteen-years' experience in the field, works exclusively in this area, and prior to obtaining her certification, worked for over 300 hours as a sexual assault nurse examiner as part the certification requirements.

{¶68} Ms. Diaber explained grooming and manipulation behaviors that are common in child sexual abuse and why child victims tend to delay reporting.

{¶69} We find no abuse of discretion in the trial court's inclusion of Ms. Daiber's testimony. Ms. Diaber was a qualified expert, pursuant to Evid.R. 702. Moreover, as we held in *Cook*, "the fact that delayed reporting by sexual assault victims is not uncommon is not within the knowledge of the average juror. Thus, because [the expert's] testimony required 'specialized knowledge' it is properly characterized as expert testimony." (Emphasis deleted.) *Id*. at ¶50, quoting *State v. Solether*, 6th Dist. Wood No. WD07053, 2008-Ohio-4738, ¶65-69. *See also State v. Carter*, 8th Dist. Cuyahoga No. 104874, 2018-Ohio-2238, ¶25, quoting *State v. Stowers*, 81 Ohio St.3d 260-262-63 (1998) ("[A]n expert may provide testimony that supports 'the truth of the facts testified to by the child, or which assists the fact finder in assessing the child's veracity'"); *State v. Thompson*, 8th Dist. Cuyahoga No. 99846, 2014-Ohio-1056, ¶21 (finding that a

> SANE nurse's testimony comported with Evid.R.
> 702 and 703; thus the trial court did not err in
> allowing her to testify); *State v. Gardner*, 8th Dist.
> Cuyahoga No. 107573, 2019-Ohio-1780, ¶41-46
> (finding no error in admitting the testimony of a
> SANE nurse on "blunt force trauma" and that the
> absence of vaginal injuries is "common" in sexual
> assault).
>
> {¶70} Mr. Stuart's third assignment of error is
> without merit.

*Stuart*, 2020 WL 3047529, at *9–10. Moreover, at trial, Stuart's attorney cross-examined the nurse and established that the nurse was being paid by the prosecutor's office. Doc. 10-12, at 762–63. The nurse had not read the case file, met the victim, or reviewed the victim's psychological records. *Id*. at 766. The nurse agreed with counsel's statement that "some children … lie" and explained that "[s]ome children have trouble with reality." *Id*. The nurse confirmed that she doesn't investigate to determination the veracity of an abuse allegation, *id*. at 768, and reiterated that she had not "reviewed any documentation" involving the victim, *id*. at 776.

All told, Stuart hasn't shown that the Ohio court of appeals' decision upholding the admissibility of the nurse's expert testimony "offend[s] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Seymour*, 224 F.3d at 552.

### 4. *Ground four fails on the merits*

In ground four, Stuart argues that the trial court erred when it denied his motion to suppress. Doc. 1, at 11; Doc. 1-2, at 30. He contends that he never

"validly waive[d]" his *Miranda* rights and that he requested his attorney "multiple times during custodial interrogation." Doc. 1-2, at 30.

Whether a suspect's custodial confession is voluntary and therefore admissible at trial stems from two constitutional provisions—the Fifth Amendment right against self-incrimination and the Fourteenth Amendment's Due Process Clause. *Dickerson v. United States*, 530 U.S. 428, 433 (2000). In *Miranda v. Arizona*, the Supreme Court held that when individuals are "taken into custody or otherwise deprived of [their] freedom by the authorities in any significant way and [are] subject to questioning," certain "[p]rocedural safeguards must be employed to protect the privilege[.]" 384 U.S. 436, 478–79 (1966). Suspects must be warned that they have the right to remain silent; anything they say may be used against them; they have a right to an attorney; and if the suspects can't afford an attorney, one will be appointed for them. *Id.*, at 479. These safeguards became known as the "*Miranda* rights" and apply to state-court proceedings. *Dickerson*, 530 U.S. at 435, 438.

In his suppression motion, Stuart challenged whether he was "in custody," understood his *Miranda* rights, and asserted his right to an attorney. Doc. 1-2, at 31–33; Doc. 10-1, at 17–22; Doc. 10-2, at 6–36 (suppression hearing).

The *Miranda* rules only apply in "custodial interrogations." *Oregon v. Mathiason*, 429 U.S. 492, 494 (1977); *see Illinois v. Perkins*, 496 U.S. 292, 297 (1990). Whether an individual is *in custody* is an objective inquiry, and

"[c]ourts must examine 'all of the circumstances surrounding the interrogation' and determine 'how a reasonable person in the position of the individual being questioned would gauge the breadth of his or her freedom of action.'" *Yarborough v. Alvarado*, 541 U.S. 652, 663 (2004) (quoting *Stansbury v. California*, 511 U.S. 318, 322 (1994)). "Two discrete inquiries are essential to the determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave." *Yarborough*, 541 U.S. at 663 (quoting *Thompson v. Keohane*, 516 U.S. 99, 112 (1995)).

Once individuals are given their *Miranda* warnings, they may voluntarily waive them. *Smith v. Illinois*, 469 U.S. 91, 94–95 (1984); *Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981). If a suspect "requests counsel at any time during the interview, he is not subject to further questioning until a lawyer has been made available or the suspect himself reinitiates conversation." *Davis v. United States*, 512 U.S. 452, 458 (1994). But the suspect's request for counsel must be "unambiguous[]." *Id*. at 459. This means that "if an accused makes a statement concerning his right to counsel 'that is ambiguous or equivocal' or makes no statement, the police are not required to end the interrogation, … or ask questions to clarify whether the accused wants to invoke his or her *Miranda* rights." *Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010) (quoting *Davis*, 512 U.S. at 459). And if an accused wants to invoke his

33

right to remain silent, he must also do so "simpl[y]" and "unambiguous[ly]." *Berghuis*, 560 U.S. at 382. A suspect's "waiver must be 'voluntary in the sense that is was the product of a free and deliberate choice rather than intimidation, coercion, or deception,' and 'made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" *Berghuis*, 560 U.S. at 371 (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)); *see Colorado v. Connelly*, 479 U.S. 157, 167 (1986) ("Coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause.").

The Ohio court of appeals considered Stuart's claim as follows:

> {¶71} In Mr. Stuart's fourth assignment of error, he contends the trial court erred in denying his motion to suppress because the Mentor Police Department interview was in reality a custodial interrogation where he did not validly waive his *Miranda* rights and where he requested to speak with his attorney multiple times.
>
> {¶72} We give due deference to the trial court's assignment of weight and inferences drawn from the evidence when ruling on a motion to suppress on appeal. (Citations omitted.) *State v. Starcovic*, 11th Dist. Portage No. 2007-P-0081, 2008-Ohio-2758, ¶10.
>
> {¶73} Thus, appellate review of a motion to suppress presents a mixed question of law and fact. (Citations omitted.) *Id.* at ¶11. "The appellate court must accept the trial court's factual findings, provided they are supported by competent, credible evidence. * * * Thereafter, the appellate court must independently determine whether those factual findings meet the requisite legal standard." *Id.*, quoting *State v. Wilson*, 11th Dist. Ashtabula No.

2007-A-0044, 2007-Ohio-6557, ¶12, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶8. We review the trial court's application of the law de novo. *Id.*, citing *Wilson* at ¶12.

{¶74} "In *Miranda [v. Arizona*, 384 U.S. 436], at 444, * * * the United States Supreme Court established procedural safeguards for securing the privilege against self-incrimination guaranteed by the Fifth Amendment to the United States Constitution. The Fourteenth Amendment to the United States Constitution makes the privilege against self-incrimination applicable to a witness in a state proceeding." *Cleveland v. Oles*, 152 Ohio St.3d 1, 2017-Ohio-5834, ¶8, citing *Malloy v. Hogan*, 378 U.S. 1, 3 (1964). "A similar privilege is recognized in Article I, Section 10 of the Ohio Constitution." *Id.*

{¶75} "What are now commonly known as *Miranda* warnings are intended to protect a suspect from the coercive pressure present during a custodial interrogation." *Id.* at ¶9, citing *Miranda* at 469. "A custodial interrogation is 'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'" *Id.*, quoting *Miranda* at 444. "If a suspect provides responses while in custody without having first been informed of his or her *Miranda* rights, the responses may not be admitted at trial as evidence of guilt." *Id.*, quoting *Miranda* at 479. "Any statement, question or remark which is 'reasonably likely to elicit an incriminating response' is an interrogation." *State v. Knuckles*, 65 Ohio St.3d 494, 495 (1992), quoting *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).

{¶76} A review of the trial court's findings of fact and the hearing transcript on the motion to suppress reveals that Mr. Stuart was voluntarily at the police station to make a missing person report because J.S. did not come home after school. He willingly agreed to interview with the detectives. When the interview began, Detective Petro gave Mr. Stuart a written

*Miranda* rights form and informed him of his rights. He asked her if he needed to call his attorney, and she replied it was entirely up to him. Mr. Stuart called his attorney and left a message when there was no answer. As he was attempting to reach his attorney, he began to speak to Detective Petro without any prompting and continued to answer her questions.

{¶77} For the first 45 minutes of the interview (which lasted just a little over one hour), he spoke to the detectives willingly and freely about J.S., why she might be missing, and the "twenty minute" phone conversation he had with her when she called him while he was at the station. During that time, Mr. Stuart was able to and constantly used his cellphone for calls and texts. He received a phone call from his wife, exchanged text messages with her, and attempted to call his attorney. At no point did he assert an unequivocal and unambiguous request to speak with his attorney and stop the interview. Nothing in the actions or questioning by police gave the impression he was not free to leave at any time and or that he was under arrest. Indeed, he gave no indication that he was under the impression he was under investigation until the questioning turned to J.S.'s allegations.

{¶78} After approximately 45 minutes, Detective Petro advised Mr. Stuart about the alleged sexual assault and that she had information he had touched J.S. in an inappropriate and sexual manner. Mr. Stuart replied, "I think I need my attorney." She asked Mr. Stuart more questions to which Mr. Stuart stated that he loved his daughter and wanted his attorney. At that point, the interview stopped, Detective Petro ceased asking questions, and Mr. Stuart attempted to reach his attorney once more, leaving him another message. Detective Petro advised Mr. Stuart that if he wanted to speak further, she would be happy to talk to him. Detective Petro testified during the motion to suppress hearing that she did not decide to arrest Mr. Stuart until the end of the interview.

36

{¶79} "It is well-established that *Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him in custody. *Oregon v. Mathiason* (1977), 492 U.S. 492, 494 * * *. Similarly, the *Edwards* rule applies only if the accused invokes his right to an attorney while in custody. *United States v. Harris* (S.D. Ohio 1997), 961 F.Supp. 1127, 1135; *Minnesota v. Murphy* (1984), 465 U.S. 420, 424, * * * at fn. 3; *State v. Fry* (1988), 61 Ohio App.3d 689 * * *; *State v. Meyers* (Sept. 28, 2001), Allen App. No. 1–10–48, [2011-Ohio-3341].

{¶80} "In determining whether an individual was in custody, a court must examine all of the circumstances surrounding the interrogation, but 'the ultimate inquiry is simply whether there [was] a "formal arrest or restraint on freedom of movement" of the degree associated with a formal arrest.' *California v. Beheler* (1983), 463 U.S. 1121, 1125 * * *. 'Under this standard, a suspect obviously is in custody if he is formally placed under arrest prior to interrogation. Where the suspect has not been formally arrested, the restraint on the suspect's freedom of movement must be significant in order to constitute custody.' *State v. Staley* (May 8, 2000), Madison App. No. CA99–08–019, [2000 WL 554512], at [*]7.

{¶81} "While '[a]ny interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime[,]' a noncustodial situation is not converted into a custodial situation simply because questioning takes place in a police station. *Mathiason*, 429 U.S. at 495 * * *. Rather, the initial determination of whether an individual is in custody, for purposes of *Miranda*, depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being

questioned. *Stansbury v. California* (1994), 511 U.S. 318, 323–324 * * *.

{¶82} "Thus, 'a police officer's subjective view that the individual under questioning is a suspect, if undisclosed, does not bear upon the question whether the individual is in custody for purposes of *Miranda*.' *Id.* at 324 * * *. 'An officer's knowledge or beliefs may bear upon the custody issue, [however], if they are conveyed, by word or deed, to the individual being questioned.' *Id.* * * *

{¶83} "Yet, '[t]hose beliefs are relevant only to the extent they would affect how a reasonable person in the position of the individual being questioned would gauge the breadth of his or her "freedom of action." * * * Even a clear statement from an officer that the person under interrogation is a prime suspect is not, in itself, dispositive of the custody issue, for some suspects are free to come and go until the police decide to make an arrest.' *Id.*" *State v. Coleman*, 12th Dist. Butler No. CA2001-10-241, 2002 WL 745322, *4-5 (Apr. 29, 2002).

{¶84} The trial court found that Mr. Stuart was not in custody at the time he was interviewed by the Mentor detectives. Mr. Stuart was never prevented from leaving, he spoke freely to the detectives, and never attempted to assert his right to counsel until the end of the interview when the questioning turned to J.S.'s allegations.

{¶85} Simply because Mr. Stuart was given *Miranda* warnings does not convert a noncustodial setting into a custodial interrogation. In an apposite case cited by the trial court, *Coleman*, *supra*, the Twelfth District Court was confronted with a similar situation in which *Miranda* warnings were given as a pretext to an interview with a suspect. The appellant in that case was also at the station voluntarily, spoke freely, did not express an unequivocal right to his attorney, was not under arrest, and was told he could leave at any time. *Id.* at *4.

38

{¶86} In determining this did not convert the police investigatory interview into a custodial interrogation, the court aptly remarked that "[w]e are mindful that *Miranda* warnings were nevertheless given to Coleman. However, the mere giving of *Miranda* warnings by a law enforcement officer does not convert a noncustodial setting into a custodial setting. *See United States v. Owens* (C.A. 5, 1970), 431 F.2d 349. 'The precaution of giving *Miranda* rights in what is thought could be a non-custodial interview should not be deterred by interpreting the giving of such rights as a restraint on the suspect, converting a non-custodial interview into a custodial interrogation for *Miranda* purposes.' *United States v. Lewis* (C.A. 6, 1977), 556 F.2d 446, 449. It follows then that the *Edwards* rule did not apply and the detectives were not required to cease the interview and provide Coleman with an attorney." *Id.* at *5.

{¶87} As in *Coleman*, we agree with the trial court that Mr. Stuart was not in custody or deprived of his freedom in any significant way. As a result, *Miranda* warnings were not required. *Id.* Therefore, his motion to suppress was properly denied.

*Stuart*, 2020 WL 3047529, at *10–13.

Stuart disagrees with the court's finding that he was not *in custody*. Doc. 1-2, at 31–32. He alleges that "[a]lthough the police tried to create the appearance that Mr. Stuart was free to leave, the reality is they already had probable cause to arrest him at the time they conducted the interview." *Id.* at 32. Even so,[9] what the police officers knew at the time is irrelevant. *See*

---

[9]     At the suppression hearing, the detective who interviewed Stuart stated that she had not decided to arrest Stuart until after the interview was over and, until then, she would have been prepared to let Stuart leave. Doc. 10-2, at 20–21, 23.

*Yarborough*, 541 U.S. at 66 ("'the initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned'") (quoting *Stansbury*, 511 U.S. at 323). Stuart recites other factual aspects of the interview, Doc. 1-2, at 31–32, but doesn't explain how those facts would change the reasonableness of the Ohio court of appeals' decision. He hasn't shown that the Ohio court of appeals' decision finding that he was not *in custody* was contrary to or an unreasonable application of Supreme Court precedent, 28 U.S.C. § 2254(d)(1), or that it "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

Stuart also argues that he had not waived his *Miranda* rights. Doc. 1-2, at 32. But because he hasn't shown that he was *in custody*, the waiver question is irrelevant. *See Mathiason*, 429 U.S. at 494; *see also United States v. Malcolm*, 435 F. App'x 417, 420 (6th Cir. 2011) ("These [*Miranda*] challenges are all analytically linked, e.g., if Malcolm was not in custody, the ambiguity of his request for counsel was irrelevant because someone not in custody has no constitutional right to counsel") (citing *Edwards*, 451 U.S. at 484).

5.    *Ground seven fails on the merits*

In ground seven, Stuart argues that the trial court violated his "constitutional and statutory rights" to a speedy trial. Doc. 1-2, at 6. He

complains that the trial court took 1,564 days to rule on his motion to suppress, delaying the trial. *Id.* at 6, 39.

The Sixth Amendment to the United States Constitution guarantees a defendant a "speedy and public trial," U.S. Const. Amend. VI; *Barker v. Wingo*, 407 U.S. 514, 515-516 (1972), and applies to the states through the Fourteenth Amendment, *Klopfer v. North Carolina*, 386 U.S. 213, 223 (1967). In *Barker*, the Supreme Court refused to establish a set number of days that would constitute a violation of a defendant's speedy trial right. 407 U.S. at 523. Rather, the Court established a balancing test "in which the conduct of both the prosecution and the defendant are weighed." *Id.* at 530. Courts consider: (1) the length of the delay between the date of indictment or arrest, whichever is earlier, and the trial date; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant. *Id.*, at 530; *United States v. Marion*, 404 U.S. 307, 320–21 (1971); *see also Brown v. Romanowski*, 845 F.3d 703, 712–13 (6th Cir. 2017). No one factor is dispositive. *Barker*, 407 U.S. at 533. Rather, they are related factors that must be considered together with any other relevant circumstances. *Id.*; *Brown*, 845 F.3d at 712. And, as with other fundamental rights, defendants may knowingly and voluntarily waive their right to a speedy trial. *Barker*, 407 U.S. at 529.

In Ohio, state courts consider the speedy trial provisions found in the Ohio Revised Code, which Ohio courts consider coextensive with the Sixth Amendment speedy trial requirement. *Brown v. Bobby*, 656 F.3d 325, 330 (6th

Cir. 2011). The Ohio court of appeals considered Stuart's speedy trial claim as

follows:

> {¶103} In Mr. Stuart's final assignment of error, he
> contends the trial court erred in denying his motion
> to discharge for violation of his right to a speedy
> trial, after taking 1,564 days to rule on his motion to
> suppress.
>
> {¶104} The Supreme Court of Ohio has stated "R.C.
> 2945.71 *et seq.*, constitute a rational effort to enforce
> the constitutional right to a public speedy trial of an
> accused charged with the commission of a felony or
> a misdemeanor and shall be strictly enforced by the
> courts of this state." *State v. Gaston*, 11th Dist. Lake
> No. 2017-L-109, 2018-Ohio-4575, ¶29, quoting *State
> v. Pachay*, 64 Ohio St.2d 218 (1980), syllabus. "[F]or
> purposes of bringing an accused to trial, the
> statutory speedy trial provisions of R.C. 2945.71, *et
> seq.*, and the constitutional guarantees found in the
> United States and Ohio Constitutions are
> coextensive." *Id.*, quoting *State v. O'Brien*, 34 Ohio
> St.3d 7, 9 (1987).
>
> {¶105} "A criminal defendant, however, may waive
> his or her constitutional right to a speedy trial,
> provided such waiver is knowingly and voluntarily
> made." *Id.* at ¶30, citing *Barker v. Wingo*, 407 U.S.
> 514, 529 (1972). "Similarly, a defendant, or his or her
> counsel, may validly waive the speedy trial
> provisions of R.C. 2945.71, *et seq.*" *Id.*, citing *State v.
> McBreen*, 54 Ohio St.2d 315 (1978). "It therefore
> follows that 'a knowing, voluntary, express written
> waiver of an accused's statutory speedy trial rights
> may equate with a waiver of the coextensive
> constitutional rights, at least for the time period
> provided in the statute.' *O'Brien*, *supra*. 'Following
> an express, written waiver of unlimited duration by
> an accused of his right to a speedy trial, the accused
> is not entitled to a discharge for delay in bringing
> him to trial unless the accused files a formal written
> objection and demand for trial, following which the
> state must bring the accused to trial within a

reasonable time.'" *Id.*, quoting *O'Brien* at paragraph two of the syllabus.

{¶106} Mr. Stuart knowingly and voluntarily filed a written waiver of his constitutional and statutory rights to a speedy trial, reserving only the right to challenge pre-arrest and pre-charges. While the state filed several motions to set a date for trial and/or a status conference, Mr. Stuart never formally demanded that a trial date be set, nor did he file a motion to withdraw his waiver.

{¶107} Because Mr. Stuart's written waiver was knowingly and voluntarily made and was of unlimited duration and he did not object and demand a trial, pursuant to *O'Brien*, the speedy trial provisions in R.C. 2945.71 *et seq.*, do not apply. The trial court did not err when it concluded appellant was not entitled to discharge, pursuant to R.C. 2945.73(B). *See Gaston* at ¶32.

{¶108} "In *Barker*, *supra*, the United States Supreme Court 'set forth a balancing test that considers the following factors to determine whether trial delays are reasonable under the Sixth and Fourteenth Amendments to the United States Constitution: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant."'" *Id.* at ¶34, quoting *State v. Taylor*, 98 Ohio St.3d 27, 2002-Ohio-7017, ¶38, quoting *Barker* at 530.

{¶109} Construing Mr. Stuart's motion to discharge as a formal withdrawal of his waiver, the trial court properly applied the *Barker* factors. The trial court found that the length of the delay was only 34 days between Mr. Stuart's withdrawal of his speedy trial waiver and the date set for trial. We agree this was not prejudicial, especially in light of the fact that the defense indicated that it would not be prepared to defend the case by that date. In fact, the defense filed a motion for a continuance, which the court granted.

{¶110} Mr. Stuart contends that he suffered prejudice because by the time the case was tried, the victim reached the age of majority. But Mr. Stuart fails to state how the victim reaching the age of majority prejudiced his case or deprived him access to witnesses and evidence. We agree with the state and the trial court that Mr. Stuart errantly relies on the time period between the motion to suppress hearing and the court's subsequent denial of that motion when making this argument and that the relevant time period is between the filing of his motion to discharge and the date set for trial.

{¶111} Finding the trial court properly denied Mr. Stuart's motion to discharge because his speedy trial rights were not violated, Mr. Stuart's seventh assignment of error is without merit.

*Stuart*, 2020 WL 3047529, at *15–16.

Stuart doesn't identify anything unreasonable about the Ohio court of appeals' decision—not the facts or the law. He says that he "never contemplated that the court would rely on the time waiver to allow [1,564 days] to elapse prior to trial." Doc. 1-2, at 40. But he concedes that he signed an "unlimited waiver" of his speedy trial rights. *Id*. And the Ohio court of appeals' interpretation of state law in finding that a defendant "may validly waive the speedy trial provisions of R.C. 2945.71, *et seq*.," *Stuart*, 2020 WL 3047529, at *15, is binding on this Court.[10] *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005)

---

[10] In *Zedner v. United States*, 547 U.S. 489, 500 (2006), the Supreme Court found that a federal defendant could not prospectively waive the application of the federal Speedy Trial Act. *Zedner* doesn't apply to the constitutional right to a speedy trial under the Sixth Amendment. *Id*. at 501; *see also Carr v. Warden, S. Ohio Corr. Facility*, No. 3:10-cv-245, 2011 WL 2443547, at *9 (S.D. Ohio May 24, 2011), *report and recommendation adopted*, 2011 WL 2437264 (S.D. Ohio June 14, 2011).

("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus").

Moreover, at the end of the suppression hearing the court asked Stuart's attorney if he wanted a new trial date and Stuart's attorney did not say that he did. Doc. 10-2, at 35. Stuart doesn't dispute that between the suppression hearing and trial, he didn't ask the court to set a trial date and remained silent when the State filed nine motions asking the court to do so. Doc. 10-1, at 396–97. Ground seven fails on the merits.

### 6.    *Ground eight is procedurally defaulted*

In ground eight, Stuart alleges "wrongful arrest." Doc. 1-2, at 42. His description of ground eight spans 19 pages. *Id*. at 42–61. To the extent that he relies on an alleged violation of his *Miranda rights*, *id*. at 44, 48, his claim fails for the same reason as ground four. Stuart's argument that the trial court and prosecution "wrongfully invoke[ed] Ohio's rape shield law, *id*. at 51, 54, is the same claim as ground one and is procedurally defaulted for the same reason. And Stuart's arguments related to character evidence is best described as a challenge to the sufficiency of the evidence, *e.g., id*. at 49, 53–54, 55, 58, 60, Doc. 11, at 4, and is procedurally defaulted for the same reason as Stuart's sufficiency-of-the-evidence claim in ground five.

Any other aspects of Stuart's arguments in ground eight that could support some undefined error[11] are procedurally defaulted. *See, e.g.,* Doc. 1-2, at 47, 50, 52, 58 (Stuart complaining of various things not presented to the state courts such as accusing the state of entrapping him and arresting him without a warrant, cumulative error,[12] and claiming that the victim's statements to police were not voluntary). Any of these claims based on the record that should have been but were not raised on direct appeal are procedurally defaulted. *See Buell*, 274 F.3d at 349. Any of these claims that Stuart raised in his post-conviction petition, *see* Doc. 10-1, at 383–84, are also procedurally defaulted. First, the trial court denied Stuart's post-conviction petition as untimely and as barred by res judicata, *id.* at 392. *See Smith v. Warden, Toledo Corr. Inst.*, 780 F. App'x 208, 219 (6th Cir. 2019) (claims raised in a post-conviction petition that the state court denies as untimely are procedurally defaulted) (citing *Walker v. Martin*, 562 U.S. 307, 310–11 (2011)); *Coleman v. Mitchell*, 268 F.3d 417, 427 (6th Cir. 2001) (claims raised in a post-conviction petition that the state court denies on the basis of res judicata are procedurally defaulted) (citing *State v. Perry*, 226 N.E.2d 104, 108 (Ohio 1967)). Second, Stuart didn't appeal the trial court's decision. *See Williams*, 460 F.3d

---

[11]     "Liberal construction [of a pro se habeas petition] does not require a court to conjure allegations on a litigant's behalf." *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004) (quoting *Erwin v. Edwards*, 22 F.App'x 579, 580 (6th Cir. 2001)).

[12]     "[C]umulative error claims are not cognizable on habeas because the Supreme Court has not spoken on this issue." *Williams*, 460 F.3d at 816.

at 806 (petitioners must pursue their claims through the state's "ordinary appellate review procedures" or the claims are procedurally defaulted).

Stuart complains about other state-law aspects of his arrest, Doc. 1-2, at 52 (listing his arraignment and custody and citing the policies and procedures in the "Ohio Revised Code for Arrest"), but because he never presented these issues to the state courts, they are procedurally defaulted. *See Williams*, 460 F.3d at 806. And because they describe state-law violations, they are not cognizable. *See Estelle*, 502 U.S. at 67–68. Stuart alleges a "Brady law" violation, *id*. at 44, 51, 59, 60, but hasn't presented a *Brady*[13] claim to the state courts. *See also* Doc. 11, at 2–3 (Stuart's traverse citing, without explanation, "numerous 'Brady law' violations," "numerous fabrications and manufactured statements and/or reports and/or documents," and "numerous violations of 'quashing' of mitigating evidence").

Stuart hasn't alleged cause to excuse his procedural default of any of the claims in ground eight, or any of the remaining grounds for relief, discussed below.

### 7.    *Ground nine is procedurally defaulted and not cognizable*

In ground nine, Stuart "declares his 'actual innocence.'" Doc. 1-2, at 62. This claim is procedurally defaulted because Stuart hasn't presented it to the

---

[13]     *Brady v. Maryland*, 373 U.S. 83 (1963).

state courts.[14] *See Williams*, 460 F.3d at 806. Moreover, it is not cognizable. *See Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007) (stand-alone actual-innocence claims are not cognizable in habeas).

### 8.  *Ground eleven is procedurally defaulted*

In ground eleven, Stuart alleges an "evidentiary hearing violation, and deprivation thereof." Doc. 1-2, at 69. He doesn't say what kind of hearing he claims he should have had. If he means a hearing on the "prior bad acts" testimony that he alleged in ground two, *see* Doc. 1-2, at 3–4, the claim is procedurally defaulted for the same reason explained in ground two. If Stuart means a different kind of hearing, he didn't present the claim to the Ohio courts, so it is procedurally defaulted.

### 9.  *Ground twelve is procedurally defaulted and not cognizable*

In ground twelve, Stuart alleges that the police department illegally seized forensic evidence when officers collected his DNA and blood samples. Doc. 1-2, at 70–71. He didn't present this claim to the Ohio courts though, so it is procedurally defaulted. *See Williams*, 460 F.3d at 806. And to the extent that Stuart raises a Fourth Amendment violation, it is not cognizable because federal habeas review of a petitioner's arrest, search, or seizure is barred where the state has provided a full and fair opportunity to litigate such a claim. *See*

---

[14]     To the extent it could be said that Stuart raised this claim in his post-conviction petition, *see* Doc. 10-1, at 383–84, it is procedurally defaulted because the trial court denied Stuart's petition as untimely and barred by res judicata, *id*., at 392, and Stuart didn't appeal that decision.

*Stone v. Powell*, 428 U.S. 465, 494 (1976); *see Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982) (finding that Ohio criminal and appellate rules provide adequate procedural mechanisms for litigating Fourth Amendment claims); *see also, e.g., Dotson v. Harris*, No. 4:19-cv-1237, 2020 WL 907642, at *7 (N.D. Ohio Jan. 29, 2020), *report and recommendation adopted*, 2020 WL 906344 (N.D. Ohio Feb. 25, 2020). Here, Stuart filed a motion to suppress, Doc. 10-1, at 17, in which he could have raised this argument; had a hearing on his motion to suppress, Doc. 10-2, at 6–36; and appealed the trial court's denial of his motion to suppress, Doc. 10-1, at 192. So Stuart availed himself of the procedural mechanisms for litigating any Fourth Amendment claim. *See Riley*, 674 F.2d at 526.

Moreover, review of the transcript shows that no DNA or blood evidence was used at trial. *See* Doc. 10-2. So Stuart's claim is also not cognizable because he hasn't shown that he is in state custody *as a result of* an alleged Fourth Amendment violation. *See* 28 U.S.C. § 2254(a) (habeas relief is only available for a person "in custody in violation of the Constitution or laws or treaties of the United States.").

### 10.   *Ground thirteen is procedurally defaulted*

In ground thirteen, Stuart alleges "(Conflict of interest jury tamper), pursuant to a mis-trial, not executed." Doc. 1-2, at 72. Stuart contends that at a fast-food restaurant the prosecutor and police sat less than two feet away from the jurors and spoke to them. *Id*. He believes that the prosecution paid

for the jurors' lunches. *Id*. Stuart should have either raised this claim at trial, when it purportedly happened, or in his post-conviction petition pertaining to matters outside the record. He did neither of these things, so ground thirteen is procedurally defaulted.

### 11. *Ground fourteen is procedurally defaulted*

In ground fourteen, Stuart alleges an ineffective-assistance-of-counsel claim. Doc. 1-2, at 73. The gist of Stuart's claim is that trial counsel postponed the trial until he received the money Stuart owed him. *Id*. But Stuart never presented this claim to the Ohio courts, and it is now too late to do so, so it is procedurally defaulted. His claim that appellate counsel failed to list ineffective assistance of trial counsel, *id*., is also procedurally defaulted because, as explained above in ground two, Stuart never filed an Ohio Appellate Rule 26(B) application to reopen and the time to do so has passed. So Stuart has procedurally defaulted any ineffective-assistance-of-trial- or appellate-counsel claims. *See Edwards*, 529 U.S. 451–53.

### 12. *Ground fifteen is not cognizable, procedurally defaulted, and fails on the merits*

In ground fifteen, Stuart argues that the trial court "failed to invoke impeachment, evidence rules, 601 through 616." Doc. 1-2, at 75. He also complains that the court permitted hearsay evidence in violation of "Evid. R. 801." *Id*. This claim challenges state-law evidentiary rulings and is not cognizable on habeas. *See Estelle*, 502 U.S. at 67–68. Moreover, it is procedurally defaulted because Stuart didn't cite violations of these rules of

evidence on direct appeal. *See* Doc. 10-1, at 189–228. Finally, it fails because Stuart doesn't identify what evidence he claims was impermissibly admitted. "It is not the role of the district court to scour the petitioner's trial transcript to find support for the arguments in his habeas corpus petition." *Wenglikowski v. Jones*, 306 F. Supp. 2d 688, 695 (E.D. Mich. 2004), *aff'd in part on other grounds*, 162 F. App'x 582 (6th Cir. 2006).

> 13. *Ground sixteen is not cognizable, procedurally defaulted, and fails on the merits*

In ground sixteen, Stuart alleges "criminal coercion with intimidation, pursuant to forced testimony of spouse against spouse." Doc. 1-2, at 76. It is unclear why Stuart raises this issue; the transcript doesn't show that Stuart's spouse testified. *See* Doc. 10-2, at 50. If Stuart is talking about someone else's spouse, he lacks standing to raise the issue. Moreover, spousal privilege is a state-law issue. *See Sandoval v. Toledo Corr. Inst.*, 409 F. App'x 847, 850 (6th Cir. 2010). And Stuart's claim is procedurally defaulted because Stuart never presented it to the Ohio courts.

> 14. *Ground seventeen is procedurally defaulted*

In ground seventeen, Stuart alleges "fraud upon the court." Doc. 1-2, at 77. He claims, among other things, that papers were "shredded," transcripts were "fraudulently documented," and all of the police and prosecution "discovery reports are suspected of the same fraud, with alterations to obscure." *Id*. This claim is based on allegations outside the record, so it should have been, but was not, raised by Stuart in his post-conviction petition. State

law bars Stuart from raising it in a second state post-conviction petition unless he can show that he was unavoidably prevented from discovering the facts on which he relies. *See* Ohio Rev. Code § 2953.23(A). Since Stuart has only stated allegations, not facts, he could not show that he is entitled to file a second post-conviction petition. Ground seventeen is procedurally defaulted.

### Conclusion

For the reasons set forth above, I recommend that Stuart's Petition be dismissed in part and denied in part.

Dated: January 31, 2024

   */s/ James E. Grimes Jr.*
   James E. Grimes Jr.
   U.S. Magistrate Judge

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).